

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

JAN 27 2012

Stephan Harris, Clerk
Cheyenne

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | : <br> : <br> : CIVIL ACTION NO.: 2:11-cv-00302-ABJ |
| Plaintiff, | : |
| v. | : |
| 1ST INVESTMENT MANAGEMENT, L.L.C., | : **DEFAULT JUDGMENT ORDERING A** <br> : **PERMANENT INJUNCTION AND** <br> : **OTHER ANCILLARY RELIEF AGAINST** |
| Defendant. | : **DEFENDANT 1ST INVESTMENT** <br> : **MANAGEMENT, L.L.C.** |

## I.   INTRODUCTION

On September 7, 2011, Plaintiff, Commodity Futures Trading Commission ("Commission" or "CFTC"), filed its *Complaint for Permanent Injunction, Civil Monetary Penalties, and Other Equitable Relief* ("Complaint") against Defendant 1st Investment Management, L.L.C. ("1st Investment") for violations of certain registration provisions of the Commodity Exchange Act ("the Act"), as amended by the Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008 ("CRA")), §§ 13101-13204, 122 Stat. 1651 (enacted June 18, 2008), 7 U.S.C. §§ 1 *et seq.* (2006), and the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No. 111-203, Title VII §§701-774, 124 Stat. 1376 (effective July 16, 2011), to be

codified at 7 U.S.C. §§ 1 *et seq.*[1] and the Commission Regulations ("Regulations") promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2011). (Dkt. No. 1.)

On October 24, 2011, the Commission filed its Request to Clerk to Enter Default and Affidavit in support thereof against 1st Investment pursuant to Fed. R. Civ. P. 55(a) (Dkt. No. 10), and the Clerk entered a Default against 1st Investment on that same day. (Dkt. No. 11.)

Pursuant to Fed. R. Civ. P. 55(b), this matter now comes before the Court on the Commission's *Motion for Default Judgment, Permanent Injunction, Civil Monetary Penalties and Other Equitable Relief and Memorandum in Support Thereof* ("Motion") against 1st Investment for its failure to plead an Answer or otherwise respond in the instant matter to the Commission's Complaint.

This Court has considered the entire record in this matter, including the Commission's Motion, Memorandum in Support of the Motion and the attachments to the Memorandum, and finds that good cause exists for entry of the relief requested.

Accordingly, the Commission's Motion is **GRANTED**, as detailed below.

**THE COURT HEREBY FINDS:**

---

[1] All citations to Sections of the Act that have not been amended will read as follows: "Section x of the Act, 7 U.S.C. § x (2006)." All citations to the Act as amended by the CRA, but not by the Dodd-Frank Act, will read as follows: "Section x of the Act, 7 U.S.C. § x (Supp. III 2009)." All sections of the Act that have been amended by the Dodd-Frank Act will read as follows: "Section x of the Act, as amended, to be codified at 7 U.S.C. § x."

##  II.     JURISDICTION AND VENUE

1. The Act establishes a comprehensive system for regulating the purchase and sale of futures, options on futures and off-exchange foreign currency ("forex") transactions. This Court has jurisdiction over 1st Investment and the subject matter of this action pursuant to Section 6c(a) of the Act, as amended, to be codified at 7 U.S.C. § 13a-1(a), which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder, the Commission may bring an action in the proper district court.

2. This Court has jurisdiction over the forex transactions at issue in this action pursuant to Sections 2(c)(2) and 6c of the Act, as amended, to be codified at 7 U.S.C. §§ 2(c)(2) and 13a-1.

3. Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), because 1st Investment transacts business in this District and certain transactions, acts, practices, and courses of business alleged in the Complaint occurred, are occurring, and/or are about to occur within this District.

## III.     PARTIES

4. The Commission is a federal independent regulatory agency charged by Congress with the administration and enforcement of the Act, as amended, to be codified at 7 U.S.C. §§ 1 *et seq.*, and the Regulations thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2011).

5.  Defendant **1st Investment, L.L.C.** is a Wyoming limited liability company ("L.L.C.") with its principal place of business located at 2710 Thomes Ave., Cheyenne, Wyoming 82001. 1st Investment registered as an L.L.C. on September 24, 2007. 1st Investment also operates the website www.1stfx.net, where it solicits potential customers to engage in, among other things, online forex trading. 1st Investment has never been registered with the Commission in any capacity.

### IV.   PROCEDURAL HISTORY

6.  On September 7, 2011, the Commission filed its two-count Complaint against 1st Investment seeking injunctive and other equitable relief for violations of certain registration provisions of the Act, the Act as amended, and the Regulations.

7.  Thereafter, on September 12, 2011, the Commission properly served 1st Investment pursuant to Fed. R. Civ. P. 4(h)(1)(B), by delivering copies of the Summons and Complaint to 1st Investment's registered agent in Wyoming. The Commission filed the executed proof of service with the Court on September 13, 2011, and, as such, the Clerk made an entry into the Docket noting that 1st Investment's response to the Complaint was due on or before October 3, 2011, pursuant Fed. R. Civ. P. 12(a)(1). (Dkt. No. 8.)

8.  1st Investment, however, failed to answer or otherwise respond to the Complaint within the time permitted by Fed. R. Civ. P. 12(a)(1). Accordingly, on October 24, 2011, the Commission filed its Request to Clerk to Enter Default and Affidavit in support thereof against 1st Investment pursuant to Fed. R. Civ. P. 55(a) (Dkt. No. 10) and the Clerk entered a Default against 1st Investment on that same day. (Dkt. No.11.)

## V.     **FINDINGS OF FACT**

9. The allegations of the Complaint are well-pled and hereby taken as true. This Order is supported by the following facts:

### A.   **Statutory and Regulatory Background**

10. On October 18, 2010, the Commission enacted new regulations implementing certain provisions of the Dodd-Frank Act with respect to forex transactions.

11. Pursuant to Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (Supp. III 2009), an entity must be registered if it wants to solicit or accept orders from a non-Eligible Contract Participant ("non-ECP") in connection with forex transactions at a retail foreign exchange dealer ("RFED") or futures commission merchant.

12. An Eligible Contract Participant ("ECP") is defined by the Act, in relevant part, as "an individual who has amounts invested on a discretionary basis, the aggregate of which is in excess of (i) $10 million, or (ii) $5 million and who enters the transaction to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual." *See* Section 1a(18)(A)(xi) of the Act, as amended, to be codified at 7 U.S.C. § 1a(18)(A)(xi).

13. For purposes of Part 5 of the Regulations, an RFED is defined in Regulation 5.1(h)(1), 17 C.F.R. § 5.1(h)(1) (2011), as any person that is, or offers to be, the counterparty to a retail forex transaction, except for U.S. financial institutions, registered brokers or dealers, associated persons of registered brokers or dealers, or financial holding companies, which are exempt from the definition of an RFED.

14. Pursuant to Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011), in connection with forex transactions, all RFEDs must be registered with the Commission as of October 18, 2010.

**B.   1st Investment**

13. Through its website, www.1stfx.net, 1st Investment solicits United States customers, who are non-ECPs, to open leveraged forex trading accounts and trade forex at 1st Investment. As advertised on its website, 1st Investment offers two types of accounts, including individual accounts and corporate accounts, both of which trade in forex.

14. The amounts required to fund these accounts are quoted in United States dollars. Further, 1st Investment utilizes the "MT4" trading platform to trade forex. Customers can open trading accounts by submitting information online through 1st Investment's website.

15. Through representations made on the website, 1st Investment "agrees to . . . act as principal for the Customer for the execution and clearance of orders for transactions involving the purchase and sale of . . . foreign exchange transactions," among other things. Furthermore, 1st Investment states that "Commodity contracts bought or sold will be transactions between [the customer] as principal and [1st Investment] as principal," which renders 1st Investment a counterparty to forex transactions.

16. Further, the forex transactions 1st Investment engages in neither result in delivery within two days nor create an enforceable obligation to deliver between a seller and a buyer who have the ability to deliver and accept delivery, respectively, in connection with their lines of

business. Rather, these forex contracts remain open from day to day and ultimately are offset without anyone making or taking delivery of actual currency (or facing an obligation to do so).

17. Moreover, 1st Investment does not appear to require that a person's discretionary investment funds exceed $5,000,000, or that they are otherwise classified as an ECP.

18. In addition to offering forex transactions to non-ECPs, 1st Investment allows customers to invest on a margined basis. In other words, 1st Investment allows customers to invest with only a percentage of the value of the forex contracts that they purchase or intend to purchase. Customers are only required to keep sufficient funds in their accounts to meet 1st Investment's margin requirements.

19. Yet, at no time has 1st Investment been registered with the Commission in any capacity.

20. Furthermore, 1st Investment is not exempt from registration.

## VI. CONCLUSIONS OF LAW

**A.    The CFTC Has Jurisdiction Over 1st Investment's Forex Transactions.**

21. The Commission has jurisdiction over 1st Investment's forex transactions because three criteria are met: (1) the transactions are offered or entered into (i) with a person that is a non-ECP and (ii) on a leveraged or margined basis or financed by the offeror, counterparty, or person acting in concert with; (2) the transactions do not result in actual delivery within two days or otherwise create an enforceable obligation to make or take delivery in connection with the parties' line of business; and (3) 1st Investment, the defendant and counterparty to the transactions with the non-ECPs, is not exempt from registration. Sections 2(c)(2)(C)(i) and (ii)

of the Act, 7 U.S.C. § 2(c)(2)(C)(i) and (ii) (Supp. III 2009). All three criteria are met in the present case.

**B.     1st Investment Violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act by Failing to Properly Register Before Soliciting and Taking Forex Orders for an RFED from Non-ECPs.**

22.     1st Investment violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (Supp. III 2009), by soliciting and taking orders from non-ECPs in connection with forex transactions at an RFED without being properly registered.

23.     Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (Supp. III 2009), which includes forex transactions offered to, or entered into with, a non-ECP on a "leveraged or margined basis" and was not a counterparty that is exempted from registration. The transactions referred to include leveraged or margined forex transactions conducted with non-ECPs at an RFED. These transactions do not result in actual delivery of the traded foreign currency within two days or create an enforceable obligation to deliver the foreign currency.

24.     1st Investment solicits and enters into leveraged or margined forex transactions with non-ECPs that do not involve actual delivery of foreign currency or any obligation to do so. The transactions (*i.e.*, the buying and selling of foreign currency pairs) will occur between the non-ECPs and 1st Investment. In other words, 1st Investment is soliciting and entering into orders with non-ECPs on its own behalf. According to the information on its website, as well as information that is available from the applicable regulatory bodies, 1st Investment is not one of the persons exempt from registration. (*i.e.*, a financial institution, registered broker-dealer, insurance company, financial holding company, or investment bank holding company).

25. Thus, because 1st Investment is not registered in any capacity with the Commission, it has violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (Supp. III 2009).

C. **1st Investment Violated Regulation 5.3(a)(6)(i) by Failing to Properly Register as a RFED.**

26. 1st Investment also violated Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011), by operating as an RFED without properly registering.

27. Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011), provides that it is unlawful for any RFED to operate as such without registering with the Commission. Regulation 5.1(h)(1), 17 C.F.R. § 5.1(h)(1) (2011), defines an RFED as any person that is, or offers to be, the counterparty to a forex transaction, except for the following specifically enumerated entities: financial institutions, registered broker-dealers, certain futures commission merchants, insurance companies, financial holding companies or investment bank holding companies. Again, 1st Investment does not fall within any of these specifically enumerated categories. Nonetheless, it solicits and/or accepts orders to enter into forex transactions with customers.

28. Due to its failure to register with the Commission, 1st Investment has violated Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011).

VII. **ORDER FOR PERMANENT INJUNCTION AND ANCILLARY RELIEF**

29. The Commission has shown that 1st Investment has engaged, is engaging, and is about to engage in acts and practices which violate Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (Supp. III 2009), and Regulation 5.3(a)(6)(i), 17 C.F.R. §

5.3(a)(6)(i) (2011). Notwithstanding its default, the totality of the circumstances establish that, unless restrained and enjoined by this Court, there is a reasonable likelihood that 1st Investment will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act, the Act as amended and the Regulations. In addition, the imposition of other ancillary equitable relief is required to comply with the basic objectives of the Act and the Regulations. Furthermore, the nature of 1st Investment's violations and the need to deter others from committing similar violations of the Act, the Act as amended and the Regulations warrants the imposition of a civil monetary penalty.

**IT IS HEREBY ORDERED THAT:**

30. 1st Investment has violated Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (Supp. III 2009), and Regulation 5.3(a)(6)(i), 17 C.F.R. § 5.3(a)(6)(i) (2011). Therefore, judgment shall be and hereby is entered in favor of the Commission and against 1st Investment as follows:

**A.   Prohibition on Violations of Section 2(c)(2)(C)(iii)(I)(aa) of the Act and Regulation 5.3(a)(6)(i)**

31. 1st Investment, all persons and entities insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of 1st Investment, and all persons and entities insofar as they are acting in concert or participation with 1st Investment who receive actual notice of this order by personal service or otherwise, shall be permanently prohibited, enjoined and restrained from directly or indirectly:

    a.    engaging in any conduct in violation of Section 2(c)(2)(C)(iii)(I)(aa) of the Act, 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) (Supp. III 2009), including, but

    not limited to, soliciting or accepting orders from any person that is a non-ECP in connection with forex transactions; and

  b.  engaging in any conduct in violation of Regulation 5.3(a)(6)(i),17 C.F.R. § 5.3(a)(6)(i) (2011), including, but not limited to, offering to be the counterparty to its customers' forex transactions.

**B.** **Removal of Website**

32. 1st Investment, all persons and entities insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of 1st Investment, and all persons and entities insofar as they are acting in concert or participation with 1st Investment who receive actual notice of this order by personal service or otherwise, shall remove or cause to be removed from the Internet all web pages posted or authorized by them to be posted in which they solicit or accept orders or accounts from non-ECPs in connection with forex transactions or offer to be the counterparty to customers' forex transactions whether through www.1stfx.net, the Uniform Resource Locater ("URL") associated with such domain name, and/or any other domain name or URL created, operated, hosted and/or authorized by 1st Investment, in whole or in part. This includes, but is not limited to, submitting a removal request of the domain name(s) associated with the aforementioned conduct and corresponding URL(s) to the appropriate web-host provider and/or domain registration company.

33. Any person or entity providing web-hosting or domain name registration services in the United States for any website, domain name or affiliated URL under the ownership of 1st Investment, in whole or in part, which 1st Investment uses to solicit or accept orders or accounts from non-ECPs in connection with forex transactions at 1st Investment or to offer to

be the counterparty to customers' forex transactions, including, but not limited to, www.1stfx.net, the URL associated with such domain name, and/or any other domain name or URL created, operated, hosted and/or authorized by 1st Investment, in whole or in part, who receives actual notice of this Order by personal service or otherwise shall:

    a.    remove or cause to be removed from the Internet all web pages, within their control, which are posted or authorized or to be posted or authorized by 1st Investment or any persons and entities insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of 1st Investment, in which 1st Investment: 1) solicits or accepts orders or accounts from non-ECPs in connection with forex transactions at 1st Investment; or 2) offers to be the counterparty to customers' forex transactions;

    b.    preserve all documents related to any website operated, in whole or in part, under the name www.1stfx.net, as well as any website that is substantially identical in appearance to that website; and

    c.    immediately notify counsel for the Commission of any other web page or website operated or controlled by or on behalf of 1st Investment.

**C.**    **Trading, Solicitation and Registration Prohibitions**

34.    1st Investment, all persons and entities insofar as they are acting in the capacity of agents, servants, employees, successors, assigns, or attorneys of 1st Investment, and all persons and entities insofar as they are acting in concert or participation with 1st Investment who receive actual notice of this order by personal service or otherwise, shall be permanently prohibited, enjoined and restrained from directly or indirectly:

    a.    trading on or subject to the rules of any registered entity (as that term is defined in Section 1a of the Act, as amended, to be codified at 7 U.S.C. § 1a);

      b.    entering into any transactions involving futures, options, commodity options (as that term is defined in Regulation 1.3(hh), 17 C.F.R. § 1.3(hh) (2011)), (commodity options), security futures products and/or foreign currency (as described in Section 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, 7 U.S.C. § 2(c)(2)(B) and 2(c)(2)(C)(i) (Supp. III 2009) (forex contracts)), for their own personal account or for any account in which they have a direct or indirect interest;

      c.    controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options, commodity options, security futures products and/or forex contracts;

      d.    soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any futures, options, commodity options, security futures products and/or forex contracts;

      e.    applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring such registration or exemption from registration with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011); and

      f.    acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2011)), agent, or any other officer or employee of any person registered, exempted from registration or required to be registered with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011).

**D.    Equitable Relief Provisions**

35.    The equitable relief provisions of this Order shall be binding upon 1st Investment and any person who is acting in the capacity of officer, agent, employee, servant, or attorney of 1st Investment, and any person acting in active concert or participation with 1st Investment who receives actual notice of this Order by personal service or otherwise.

**E.     Civil Monetary Penalty**

36.     1st Investment shall pay to the Commission a civil monetary penalty in the amount of $280,000, plus post-judgment interest.

37.     Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on that day, pursuant to 28 U.S.C. § 1961(a).

38.     1st Investment shall pay the civil monetary penalty by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. Unless the payment is made by electronic funds transfer, it shall be made payable to the Commodity Futures Trading Commission and sent to:

Commodity Futures Trading Commission
Division of Enforcement
Attn: Accounts Receivable – AMZ 340
DOT/FAA/MMAC
6500 S. MacArthur Blvd.
Oklahoma City, OK 73169
(405) 954-5664
Email Box: 9-AMC-AR-CFTC

39.     If 1st Investment chooses to make the payment by electronic funds transfer, it shall contact Linda Zurhost or her successor at the address above to receive payment instructions and shall fully comply with those instructions. 1st Investment shall submit its payment with a cover letter that identifies 1st Investment and the name and docket number of this proceeding. 1st Investment shall simultaneously submit copies of the cover letter and the form of payment to: (1) the Director, Division of Enforcement, Commodity Futures Trading Commission, Three

14

Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581; Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address; and (2) Rick Glaser, Associate Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

### VIII.  MISCELLANEOUS PROVISIONS

**IT IS FURTHER ORDERED THAT:**

40. Copies of this Order may be served by any means, including facsimile transmission, e-mail, United Parcel Service and Federal Express, upon 1st Investment or any other entity or person that may be subject to any provision of this Order. Kathleen M. Banar and Amanda L. Harding, both employees of the Commission, are hereby specially appointed to serve process, including this Order and all other papers in this cause.

41. All pleadings, correspondence, notices or other materials required by this Order shall be sent to Amanda L. Harding, Trial Attorney, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street N.W., Washington, D.C. 20581.

42. This Court shall retain jurisdiction of this cause to assure compliance with this Order and for all other purposes related to this action.

43. There being no just cause for delay, the Clerk of the Court shall enter final judgment against 1st Investment forthwith and without further delay.

**SO ORDERED**, at the District of Wyoming on the 27th day of Jan, 2012.

*[signature]*
UNITED STATES DISTRICT JUDGE